IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHERLE MEANS : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 20-3894 |
| MARTEN TRANSPORT, LTD, ET AL. : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                          **MARCH 14, 2022**

      Plaintiff Sherle Means filed a Complaint against Defendants Mitchell F. Allen and Marten Transport, LTD for negligence alleging that Defendant Allen reversed an 18-wheeler truck owned by his employer, Defendant Marten Transport, LTD, and ran into Plaintiff's car. Defendants seek leave to file an amended answer including the affirmative defense of judicial estoppel and move for summary judgment on the same ground. For the following reasons, the Motion for Leave to File Amended Answer (ECF No. 35) will be denied, and the Motion for Summary Judgment (ECF No. 36) will be dismissed as waived.

**I.     BACKGROUND**

      Plaintiff alleges that Defendant Allen negligently put his 18-wheeler truck, which was owned by Defendant Marten Transport, LTD, in reverse and ran into her car.  The estoppel dispute at issue here concerns testimony about Plaintiff's treatment of injuries resulting from the car crash that she gave at a Workers' Compensation hearing, which addressed a workplace injury that preceded the car crash.  Defendants assert that Plaintiff's testimony is irreconcilably inconsistent with the claim she now brings and request that we judicially estop Plaintiff from recovering for any injuries resulting from the crash, or in the alternative, estop her from recovery for any treatment after the date of her testimony.  Defendants seek to file an amended answer

including the affirmative defense of estoppel and assert that they should prevail at summary judgment on the issue of estoppel.  Defendants filed their Motion for Leave to File Amended Answer and Motion for Summary Judgment simultaneously.  Plaintiff filed responses opposing the amendment (ECF No. 39) and summary judgment (ECF No. 40).  Defendants' motions will be denied because Plaintiff satisfactorily explained the alleged inconsistencies and any supposed contradictions would more properly be the subject of cross-examination, not judicial estoppel.

On October 26, 2016, two years before the car crash at issue in this case, Plaintiff suffered a lumbar spine injury in an unrelated workplace accident while employed at Amazon. (Defs.' Mot. Sum. J. Ex. 5, 5:15-17, 6:13-17.)  An MRI report from December 13, 2016 recorded the following conditions: mild diffuse bulging disc (L3-4); mild diffuse bulging disc (L4-5); mild effusion and bulging disc (L5-S1).  (Pl.'s Resp. to Mot. Sum. J. Ex. D, 4.)  While she still experienced some back pain from her workplace injury at the time of the car crash, the pain did not prohibit her from "doing anything," and it "was more of a discomfort sensation . . . than a painful sensation."  (Means Dep., Pl.'s Resp. to Mot. Sum. J. Ex. E, 111:14-112:2.)

On June 24, 2018, two years after the workplace injury, Plaintiff was injured in this motor vehicle crash, when Defendant Allen reversed an 18-wheeler truck, and ran into her car. (Compl. ¶ 4-5, 9, Notice of Removal Ex. A, ECF No. 1.)  After the crash, Plaintiff reported feeling low back pain (which progressively worsened) resulting in her being "unable to function with [her] back," as well as pain, tingling, and numbness in her left leg.  (Pl.'s Resp. to Mot. Sum. J. Ex. D, 2).  She was diagnosed with the following: Lumbar internal disc interruption disease discogenic instability (L5-S1); lateral recess stenosis with disc bulge (L5-S1); and left leg radiculopathy.  (*Id.* at 3).  Plaintiff also complained of neck pain and headaches following the

car crash, from which she had not previously suffered. (Pl.'s Resp. to Mot. Sum. J. Ex. E, 90:15-19; 112:3-15).

After a May 13, 2019 consultation with Plaintiff, Dr. Edward G. Novik, M.D., noted that Plaintiff was in a "normal state of health, pain-free until June 24, 2018 when she was involved in a motor vehicle accident." (Defs.' Mot. Sum. J. Ex. 8, 1.) Dr. Novik documented that Plaintiff had a job-related injury that "quickly resolved with a short course of physical therapy and anti-inflammatory medications." (*Id.*) On May 28, 2019, Plaintiff received a lumbar epidural steroid injection. (*Id.* at 2.)

Plaintiff also filed a claim with the New Jersey Department of Labor and Workforce Development Division of Workers' Compensation for her workplace injury and settled the matter for $13,920 on July 10, 2019. (Workers' Comp. Hrg., Defs.' Mot. Sum J. Ex. 6, 6:13-17.) Prior to the approval of the settlement, the parties each submitted expert reports and Plaintiff testified about her continuing problems related to her lower back. Plaintiff said that her lower back pain was constant and resulted in difficulty standing and walking up and down stairs. (*Id.* at 8:16-9:22.) In addition, counsel cross-examined Plaintiff about her injuries related to the car crash as follows:

> Q. Have you had any new back injuries since the inquiry that you had at Amazon?
>
> A. I had a car accident a year ago.
>
> Q. And what happened with that car accident a year ago?
>
> A. A tractor trailer backed into me.
>
> Q. Then did you get treatment after that?
>
> A. Yes.
>
> Q. What kind of treatment?

> A. I had therapy. I had injections.
>
> Q. For how long did you treat?
>
> A. Well, my treatment wasn't thorough because my mother had cancer, so I wasn't able to meet all the treatments because I take care of her. She's in Stage 4.
>
> Q. You really didn't finish treatment?
>
> A. No.
>
> Q. How long did you treat for before?
>
> A. The treatment to be honest with you, it was sporadic like I said. I can't even calculate like a steady time. If I had to, I would say maybe like four weeks.
>
> Q. And then did you filed [sic] a lawsuit for that accident?
>
> A. Yes.
>
> Q. Did you get an award from that accident?
>
> A. No, ma'am.
>
> Q. Still going on?
>
> A. Yes.
>
> . . .
>
> Q. Are you still treating at all for the subsequent accident or no?
>
> A. No.

(*Id.* at 15:9-17:5.) The Workers' Compensation judge ultimately approved the settlement, which allowed Plaintiff to reopen the case or seek additional treatment within two years of the last payment. (*Id.* at 7:10-16, 19:22-20:10.)

Plaintiff received her second lumbar epidural steroid injection on July 16, 2019 and a cervical epidural steroid injection on September 13, 2019. (Defs.' Mot. Sum. J. Ex. 8, 2.) She received a diagnostic discogram CT on December 6, 2019. (*Id.*) On July 30, 2020, Plaintiff

4

underwent surgery (an open lumbar disc decompression L5-S1, interbody cage pedicle screw stabilization L5-S1) and reported a reduction in pain through at least November 3, 2020. (Pl.'s Resp. to Mot. Sum. J. Ex. D, 3.) Plaintiff's expert witness, Dr. Marc A. Cohen, M.D., determined that Plaintiff's surgical treatment and injuries were 80% related to the car crash, and 20% related to the workplace injury. (Pl.'s Resp. to Mot. Sum. J. Ex. D, 4.)

The parties agreed to decide this matter via arbitration. The day before the arbitration was scheduled, Defendants filed the two motions at issue: Motion for Leave to File Amended Answer and Motion for Summary Judgment. (Not. of Arb., ECF No. 25.) After receiving an arbitration award, Plaintiff requested a trial *de novo*. (Demand for Tr. De Novo, ECF No. 38.)

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] factual dispute is material only if it might affect the outcome of the suit under governing law." *Id.* The court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)).

Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no

evidence in the record supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).

"Summary judgment is appropriate when operation of judicial estoppel renders a litigant unable to state a *prima facie* case." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779 (3d Cir. 2001).

### III. DISCUSSION

Defendants request leave to file an amended answer to assert the affirmative defense of judicial estoppel. Defendants' concurrently filed Motion for Summary Judgment requests that we judicially estop Plaintiff from recovering for any injuries that she suffered. Defendants argue that Plaintiff understated the treatment she received for her injuries sustained in the car crash in her Workers' Compensation hearing in order to increase her recovery in the settlement, and thus should be barred from asserting the "same injuries" because it would be inequitable. Defendants' Motion to amend will be denied. To the extent Plaintiff's statements are inconsistent, they have been explained to our satisfaction and such inconsistencies would more properly be the subject of cross-examination, not judicial estoppel. We address both Motions.

### A. Judicial Estoppel

Defendants argue that Plaintiff should be judicially estopped from recovering for any injuries incurred, or in the alternative, for treatment after the date of her supposedly inconsistent

6

testimony, on July 10, 2019. Defendants allege that Plaintiff's allegations of treatment are inconsistent with her prior testimony. Defendants' request will be denied. Defendants have failed to show, among other things, that Plaintiff's prior testimony is irreconcilably inconsistent with any allegations in the present lawsuit.

"Judicial estoppel is a fact-specific, equitable doctrine, applied at courts' discretion." *In re Kane,* 628 F.3d 631, 638 (3d Cir. 2010). Judicial estoppel bars parties from gaining an advantage by litigating one theory, but seeking another advantage by arguing an incompatible theory without good explanation. *Semper v. Gomez*, 747 F.3d 229, 247 (3d Cir. 2014). It has three threshold requirements: (1) the party asserts irreconcilably inconsistent positions; (2) the party adopted these positions in bad faith (i.e., "with intent to play fast and loose with the court"); and (3) judicial estoppel is tailored to address the harm and that no lesser sanction would be sufficient. *Montrose*, 243 F.3d at 779-80. Judicial estoppel must only be invoked when a party's inconsistencies will otherwise result in a miscarriage of justice. *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 108 (3d Cir. 1999).

### 1. *Plaintiff's statements are not irreconcilably inconsistent.*

Defendants assert that Plaintiff provided irreconcilably inconsistent statements as to when she required medical treatment for her lower back injuries. We disagree. The statements are not irreconcilably inconsistent.

In general, courts find that a statement is irreconcilably inconsistent when the subsequent position is clearly and directly contradictory to the position taken in the matter at hand. *See Montrose*, 243 F.3d at 781 (finding inconsistent positions where a hospital argued that its retirement plan was not subject to ERISA, but argued in a subsequent action that the plan was subject to ERISA); *Van Blunk v. McAllister Towing of Philadelphia, Inc.*, No. 10-00686, 2012

WL 832997, at *3 (D.N.J. Mar. 12, 2012) (finding the plaintiff's application to the Coast Guard where he claimed that he did not suffer from particular physical impairments estopped him from claiming that he was injured after the date of the application).

Defendants assert that Plaintiff's statement on July 10, 2019 that she was not currently receiving treatment for injuries sustained in the car crash is inconsistent with Plaintiff's general assertion that she received treatment from May 13, 2019 through September 4, 2020.  According to Plaintiff's doctors, Plaintiff was treated before the Workers' Compensation hearing as recently as May 13, 2019 and sought treatment after the hearing on July 16, 2019.  These statements are not necessarily inconsistent.  As Plaintiff explained, she received treatment prior to July 10, 2019, she did not complete treatment in part due to caring for her mother, who was suffering from advanced cancer.  At the time of the hearing, Plaintiff had not been treated in almost two months.  Plaintiff made no suggestion that she no longer needed treatment or that she would never seek it in the future.  While the fact that Plaintiff received treatment only six days after the hearing is potentially suspicious, it is not irreconcilably inconsistent given her explanation that her treatments were sporadic and affected by her personal circumstances.

Examining what a party actually said and the statement's context is of critical importance in determining whether a claim is irreconcilably inconsistent.  *See Van Blunk*, 2012 WL 832997, at *3 (finding the plaintiff's prior assertion that he was unable to return to work as a deckhand aboard tugs was not inconsistent with the fact that he later returned to work in other positions). Defendants, however, fail to acknowledge Plaintiff's logical explanation in their Motion, and instead merely assert that she was no longer treating for her crash injuries.  A jury could reasonably accept Plaintiff's explanation that a person may be undergoing treatment sporadically during a period of time, which is exactly what Plaintiff said in her testimony.

Since Defendants have failed to identify irreconcilably inconsistent statements and since any potential contradiction has been satisfactorily explained, Defendants have not satisfied the irreconcilability requirement.

> 2. *There is no evidence that Plaintiff acted in bad faith.*

Next, Defendants argue that Plaintiff acted in bad faith because (1) she testified at her Workers' Compensation hearing that she was no longer receiving treatment for injuries related to the car crash but received treatment before and after the hearing; and (2) Plaintiff seeks to play "fast and loose" with the Court by telling Dr. Novik that her workplace injury resolved quickly and she was "pain-free" before the car crash but attempting to recover on the "same injuries" for which she received a Workers' Compensation settlement.

Bad faith refers to "intent to play fast and loose with the court." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir.1996). Mere inconsistency is insufficient to support a finding of bad faith. *Montrose*, 243 F.3d at 781. Bad faith requires that the party (1) behave in a manner that is somehow culpable and (2) engage in culpable behavior *vis-à-vis* the court. *Id.* There is a rebuttable inference of bad faith where a party has knowledge of a claim and motive to conceal it in the face of an affirmative duty to disclose. *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003). "Accordingly, judicial estoppel may not be employed unless a litigant's culpable conduct has assaulted the dignity or authority of the court." *Montrose*, 243 F.3d at 781.

As an initial matter, the record shows that Plaintiff has been transparent with the Court, the Workers' Compensation judge, and medical professionals. Plaintiff disclosed to each treating or expert physician that she was previously injured in the workplace accident and described the symptoms, she disclosed and described the injuries and treatment related to the car

9

crash to the Workers' Compensation judge, and she disclosed her prior injuries to Defendants in discovery. At no time during the Workers' Compensation hearing did she suggest that her current back pain was unrelated to the car crash; she merely stated that because of personal obligations, she was not undergoing treatment at the time of the hearing. That Plaintiff's workplace injuries partially or completely resolved and the car accident subsequently aggravated those underlying weaknesses does not spell bad faith.

Defendants, however, contend Plaintiff's statements were made in bad faith. First, they assert that Plaintiff stood to benefit from downplaying her workplace injuries, and her attempt to recover in the instant litigation would earn her a windfall. While there is a rebuttable inference of bad faith where a party has knowledge of a potential claim and motive to conceal it in the face of an affirmative duty to disclose, this inference will not be applied. *See Krystal*, 337 F.3d at 321. Plaintiff had an affirmative duty to disclose her other injuries—to the Workers' Compensation judge, to Defendants in discovery, and to her expert witness, Dr. Cohen—and she did so. Defendants point out that Plaintiff's expert witness report from her Workers' Compensation hearing, which was completed after the car crash, does not mention the crash. This does not necessarily mean that the information was not disclosed. In any case, the Workers' Compensation judge knew of the car crash (and could have inquired about this supposed omission) and nevertheless approved the settlement.[1]

Second, Defendants repeatedly assert that Plaintiff attempts to recover for the "same injuries" for which she already received a Workers' Compensation settlement. Defendants

---

[1] Defendants also complain that Plaintiff testified that she was no longer receiving treatment for injuries related to the car crash when she had, in fact, received treatment before and after the hearing. (Def.'s Mot. Sum. J. 10). This argument is duplicative of Defendants' complaints regarding differing statements and was addressed in the preceding section.

highlight that Plaintiff told Dr. Novik that her workplace injury quickly resolved and that she was "pain-free" before the car crash. (Defs.' Mot. Sum. J. 10; Ex. 8, 1.) Again, Plaintiff provides explanation for this statement, this time in her deposition testimony. While she still experienced some back pain from her workplace injury at the time of the car crash, the pain did not prohibit her from "doing anything," including working at least part-time, and it "was more of a discomfort sensation . . . than a painful sensation." (Pl.'s Resp. to Mot. Sum. J. Ex. E, 111:14-112:2.) In any event, Plaintiff does not assert that her pain is entirely new or unique; she asserts that the car crash aggravated her existing injuries. Her expert asserts that Plaintiff's surgical treatment and injuries were 80% related to the car crash, and 20% related to the workplace injury. It is not in bad faith to assert that injuries mostly resolved but became worse as a result of an intervening circumstance.

In sum, there is no evidence of any culpable conduct. Thus, Defendants have not satisfied this prong.

> 3. *Judicial estoppel is not tailored to address the harm because cross-examination will adequately address the alleged inconsistencies.*

Finally, judicial estoppel would not be an appropriate remedy to address the alleged harm. Neither of Defendants' proposed remedies—that we estop Plaintiff from claiming any injury resulting from the car crash, or in the alternative, estop her from asserting she received treatment following the Workers' Compensating hearing—would be sufficiently narrowly tailored to address factual questions that the jury would be well-suited to answer. To the extent that there is any inconsistency between Plaintiff's positions, Defendants "will have ample opportunity to cross-examine Plaintiff or present evidence regarding any alleged prior inconsistent claims." *Van Blunk*, 2012 WL 832997, at *3. We are satisfied that cross-

examination, not estoppel, is the appropriately tailored method for addressing any possible inconsistency.

### B.      Amended Answer

"In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including … estoppel." Fed. R. Civ. P. 8(c)(1); *see Prinz v. Greate Bay Casino Corp.*, 705 F.2d 692, 694 (3d Cir. 1983).  A defendant may raise an affirmative defense in an answer.  *Adams v. Gould Inc.*, 739 F.2d 858, 870 n.14 (3d Cir. 1984).  Leave to amend should generally be granted unless the amendment was unduly delayed, made in bad faith, or futile.  *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006).  Futility means that the proposed amendment would fail to state a claim upon which relief could be granted.  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  In determining futility, courts apply the same standard as dismissal under Federal Rule of Civil Procedure 12(b)(6).  *Id.*  As applied here, the affirmative defense, accepted as true, must state a claim for relief that is plausible on its face.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Here, Defendants' proposed amendment—the affirmative defense of judicial estoppel—is legally deficient as we have explained above.  Therefore, his Motion to amend the answer will be denied.

### IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion for Leave to File Amended Answer and Motion for Summary Judgment will be denied.  An appropriate Order follows.

                                                                **BY THE COURT:**

                                                                */s/ R. Barclay Surrick*
                                                                **R. BARCLAY SURRICK, J.**